UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ORIGINAL

United States of America,

            Plaintiff,

v.

D-5, Odell Ortega,

            Defendant.

No. 18-20128

Hon. Stephen J. Murphy

**Offenses:**
Count 1: 18 U.S.C. § 2252A(g)

**Maximum Penalties:**
Minimum of 20 years in prison
Maximum of Life in prison

**Supervised Release:**
Minimum 5 years
Maximum Life

**Maximum Fines:**
$250,000

---

## Rule 11 Plea Agreement

---

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant Odell Ortega and the government agree as follows:

1.    **Guilty Plea**

  A.    **Count of Conviction**

Defendant will enter a plea of guilty to Count 1 of the Indictment, which charges: child exploitation enterprise, in violation of 18 U.S.C. § 2252A(g).

  B.    **Elements of Offense**

The elements of Count 1—child exploitation enterprise—are:

1.  The Defendant violated provisions of Chapter 110 and Chapter 117 of the United States Code, including production of child pornography and coercion and enticement of a minor;

2.  The violations were part of a series of felony violations constituting three or more separate incidents;

3.  The series of violations involved more than one victim;

4.  The Defendant committed the violations in concert with at least three other individuals.

### C.    Factual Basis for Guilty Plea

*The following facts are a sufficient and accurate basis for defendant's guilty plea:*

From at least January of 2012 to July 27, 2017, Defendant was a part of a group of individuals that worked together, using the internet, with the goal and common objective of enticing minor females to produce child pornography via web camera on a chatroom-based website (referred to as "Website A" for purposes of this plea agreement).  The group pretended to be teenage boys or girls, used fake monikers to identify themselves, targeted victims on various social media platforms, recruited the victims to chatrooms on Website A, worked together to pressure victims to engage in masturbation in the chatrooms, recorded that activity, and shared recordings with each other.

There were more than ten core members of the group, including Defendant Odell Ortega.  During the Defendant's membership in the group, there were never less than ten group members working in concert to accomplish the group's common objective.

To communicate with one another and to track the minor females the group targeted, the group maintained a spreadsheet on a website that any group member could edit.  This spreadsheet provided information about the girls targeted by the group, the level of activity in particular chatrooms on Website A, and the group's so-called "hunt strategy."  The hunt strategy set forth the best techniques for luring girls into the chatrooms on Website A.  Importantly, this website with the spreadsheet contained a chat function that allowed group members to discuss, in real time, their activities on Website A.  During these group chats, Defendant and the other group members organized and strategized about victims to target, methods to use to convince the victims to engage in sexual activity, and general group membership issues.  The group also used their group chats to share recordings of child pornography produced through their scheme, and to celebrate their successes in convincing minor females to engage in sexual activity on camera in these chatrooms.  When the hosting service that supported the spreadsheet website changed its format, the group moved onto another social media platform—Discord—to continue to organize and strategize together.

Each group member had at least one role, although at times a group member would play more than one role or switch from one role to another. For example, the group had "hunters," "talkers," and "loopers." The "hunters" visited social media websites commonly used by the minor victims to interact with the minors. They were in charge of convincing the girls to log-on to Website A. They provided the girls with links to specific chatrooms that they or another group member would create on Website A. Once the minors logged-on to Website A, the "talkers" took over the primary job of conversing with them. They asked the minors to do "dares" which escalated into sexual activity. If a minor became suspicious of the members in a chatroom or was reluctant to engage in sexual activity, then the "loopers" would play a previously recorded video of a minor actively chatting and performing sexually explicit conduct in a chatroom. The "looper" pretended to be the minor in the video. The "looper" played the video or "loop" of a minor engaged in sexual activity in order to entice the minor in the chatroom to engage in the same sexually explicit activity.

The Defendant and the other group members would record the girls they enticed to come to Website A to engage in the lascivious display of the genitals, masturbation, and other sexual acts. The Defendant was a "talker" for the group, although he occasionally hunted for victims as well. Ortega primarily used the name **CRAZY** on Website A.

The Defendant helped convince numerous minor female victims to produce child pornography on Website A. He recorded numerous different minor female victims producing child pornography on Website A. Specifically, the Defendant conspired with other group members in order to entice MV-1, MV-2, MV-3, and MV-6, among others, to produce child pornography during the course of the child exploitation enterprise.

MV-1, a child born in 2000 who resided in the Eastern District of Michigan during the scope of her exploitation, was directed and encouraged to engage in masturbation and the lascivious display of the genitals on web camera by Defendant and his co-defendants on numerous occasions. For example, at the Defendant and other group members' direction, MV-1 masturbated, live streaming on web camera, on June 28,

2015 and on October 9, 2015, and the Defendant recorded that activity on both dates.  MV-1 was 14 years old on June 28 and was 15 on October 9.

MV-2, a child born in 2001 who resided in Canada during the scope of her exploitation, was directed and encouraged to engage in masturbation on web camera in Website A chatrooms by Defendant and his co-defendants on numerous occasions.  MV-2 was frequently exploited by the group.  The group recorded over 60 videos of MV-2 engaged in masturbation and/or the lascivious display of the genitals.  For example, at the Defendant and other group members' direction, on December 31, 2015 and February 7, 2016, MV-2 masturbated, live streaming on web camera. The Defendant recorded that activity on both of these dates.  MV-2 was 13 years old when the group first sexually exploited her on Website A.  On several occasions when MV-2 was exploited by the group, including on December 31, 2015, one of the group members was targeting her from one or more locations in the Eastern District of Michigan.

MV-6, a child born in 2000 who resided in Oklahoma during the scope of her exploitation, was directed and encouraged to engage in masturbation and the lascivious display of the genitals on web camera in

Website A chatrooms by Defendant and his co-defendants on numerous occasions. For example, on December 14, 2015, December 25, 2015, and December 31, 2015 the Defendant and other group members' directed MV-6 to undress and display her genitals to the web camera. As a result, MV-6 partially undressed, while live streaming via web camera. She also sent an image of herself engaged in the lascivious display of the genitals to one of the group members on at least one of these occasions. And, on January 2, 2016, at the Defendant and other group members' direction, MV-6 engaged in the lascivious display of her genitals, while live streaming on web camera. The Defendant recorded a video of MV-6 engaged in the above-described activity on December 14, December 25, and January 2. MV-6 was 15 years old when the group first sexually exploited her on Website A. On several occasions when MV-6 was exploited by the group, including on December 25, 2015, one of the group members was targeting her from one or more locations in the Eastern District of Michigan.

Beyond the specific victims mentioned above, Defendant acknowledges participating in the sexual exploitation, or attempted sexual exploitation, of dozens of other minor females in chatrooms on

Website A.  Defendant participated in this group from its inception in 2012, through the date of the execution of a search warrant at his residence.  Defendant frequently engaged in this activity throughout the child exploitation enterprise.  Defendant recorded hundreds of minor females engaged in masturbation and/or the lascivious display of the genitals as a result of the group's enticement of those minors.

## 2. Sentencing Guideline Range

### A.    Standard of Proof

The Court will find sentencing factors by a preponderance of the evidence.

### B.    Agreed Guideline Range

There are no sentencing guideline disputes. Except as provided below, the parties recommend that Defendant's guideline range is **life imprisonment,** as set forth on the attached worksheets. The mandatory minimum sentence for the offense is **20 years or 240 months' imprisonment**.

If the Court finds:

a)     that Defendant's criminal history category is higher than reflected on the attached worksheets, or

b)     that the offense level should be higher because, after pleading guilty, Defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offense(s); or obstructed justice or committed any crime,

and if any such finding results in a higher offense gravity score than calculated by the parties in the attached worksheets, the higher offense gravity score becomes the range recommended by the Defendant and the Government. The Court is not bound by this recommendation concerning the guideline range, and Defendant understands that he will have no right to withdraw his guilty plea if the Court does not follow the recommendation. If however, the Court finds that Defendant is a career offender or an armed career criminal, as defined under the sentencing guidelines or other federal law, and that finding is not already reflected

in the attached worksheets, this paragraph does *not* authorize a corresponding increase in the agreed range.

Neither party may take a position concerning the applicable guidelines that is different than any position of that party as reflected in the attached worksheets, except as necessary to the Court's determination regarding subsections 1) and 2), above.

## C.   Relevant Conduct

The Defendant and other group members coerced and enticed dozens of minor victims between the dates of January 1, 2012, and October 23, 2017. The Defendant, in concert with others, recorded these victims producing child pornography after directing them to do so. And, he and other group members strategized about how to get numerous other minor victims, some of whom did not ultimately produce child pornography, to engage in sexually explicit conduct on Website A. The Defendant, in concert with others, lied about his age and identity in order to convince the minor victims to engage in sexual activity.

### 3.  Sentence

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

### A.  Imprisonment

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the Government makes a non-binding recommendation that the sentence of imprisonment be no more than the sentencing guideline range determined by paragraph 2B. The Court **must** impose a sentence of imprisonment on Count One of at least twenty (20) years.

### B.  Supervised Release

A term of supervised release follows the term of imprisonment. There is no agreement as to the term of supervised release. But the Court must impose a term of supervised release on Count One of no less than five years. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that results from any later revocation of supervised release.

### C.   Special Assessment

Pursuant to the Justice for Victims of Trafficking Act of 2015, Defendant will pay a special assessment of **$5,000.00**. *See* 18 U.S.C. § 3014.

### D.   Fines

There is no agreement as to fines.

### E.   Restitution

The Court shall order restitution to every identifiable victim of Defendant's offense. *See* 18 U.S.C. § 2259. Defendant agrees to pay restitution in the amount of $5,000 to any identified victim associated with his conduct on Website A and/or his membership in the above-described group from January 1, 2012, through October 23, 2017. The term "identified victim" means a victim whose identity is able to be discovered or confirmed through diligent investigation by the time of sentencing. Any identified victim still maintains a right to request a larger amount of restitution from the Court, but Defendant agrees to pay a minimum of $5,000 per identified victim.

4.    **SORNA/Adam Walsh Act**

The Defendant understands that, by pleading guilty in this case, he will be required to register as a sex offender. The Court, as a condition of supervised release or probation, must order the defendant to comply with all sex offender registration requirements under the Sex Offender Registration and Notification Act and that, if applicable, Defendant must register and keep registration current and accurate in each of the following jurisdictions: the location of residence; the location of employment; and location of any school that defendant is attending. The Defendant understands that such information must be updated not later than three business days after any change. A failure to comply with these and other obligations may subject the defendant to prosecution under federal or state law.

5.    **Forfeiture**

As part of this agreement, pursuant to 18 U.S.C. § 2253(a)(3) and/or 18 U.S.C. § 2428, Defendant agrees to forfeit his interest in the following property:

1. Any visual depiction described in Title 18, United States Code, Sections 2251, 2251A, or 2252, 2252A, 2252B, or 2260, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped, or received in violation of these subsections;

2. His interest in, if any property, real or personal, constituting or traceable to gross profits or other proceeds obtained as a result of violations of Title 18, United States Code, Sections 2252A(a)(2) and/or 2422(b); and

3. His interest in, if any property, real or personal, involved in the commission of violations of Title 18, United States Code, Sections 2252A(a)(2) and/or 2422(b).

In entering into this agreement with respect to forfeiture, Defendant expressly waives his right to have a jury determine the forfeitability of his interest in the above-described property as provided by Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure.

In entering into this agreement with respect to forfeiture, Defendant knowingly, voluntarily, and intelligently waives any challenge to the above-described forfeiture based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

Defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the

charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that he understands that the forfeiture of the above-described assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

## 6.   Use of Withdrawn Guilty Plea

If the Court allows the defendant to withdraw his guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), defendant waives his rights under Fed. R. Evid. 410, and the government may use his guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

## 7.   Other Charges

If the Court accepts this agreement, the government will dismiss any remaining charges in this case against this defendant.

**8.     Each Party's Right to Withdraw from This Agreement**

The recommendations in Part 3 are not binding on the Court. Defendant has no right to withdraw his guilty plea and the parties have no right to withdraw from this agreement if the Court decides not to follow them.

**9.     Appeal Waiver**

Defendant waives any right he may have to appeal his conviction. If the sentence imposed does not exceed the maximum recommendation allowed by Part 3 of this agreement, Defendant also waives any right he may have to appeal his sentence.  If the sentence imposed is within the guideline range determined by Paragraph 2B the Government agrees not to appeal the sentence, but retains its right to appeal any sentence below that range.  Nothing in this waiver shall be construed to bar a claim of ineffective assistance of counsel, provided that the defendant properly raises such claim by collateral review under 28 U.S.C. § 2255.

**10.    Consequences of Withdrawal of Guilty Plea or Vacation of Conviction**

If defendant is allowed to withdraw his guilty plea or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing him to withdraw his guilty plea becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea or to any conduct reflected in the attached worksheets, defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

**11.    Parties to Plea Agreement**

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

## 12. Scope of Plea Agreement

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

**13.    Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by **5:00 p.m.** on **May 4, 2018**. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.

Matthew Schneider
United States Attorney


Matthew Roth                              Kevin M. Mulcahy
Chief, Major Crimes Unit                  April N. Russo
                                          Assistant United States Attorneys


Date: April 6, 2018

By signing below, defendant acknowledges that he has read (or been read) this entire document, understands it, and agrees to its terms. He also acknowledges that he is satisfied with his attorney's advice and representation. Defendant agrees that he has had a full and complete opportunity to confer with his lawyer, and has had all of his questions answered by his lawyer.


Joe Arnone,                               Odell Ortega
Attorney for Odell Ortega                 Defendant


Date: 5/11/18

## WORKSHEET A
# OFFENSE LEVEL

Defendant __Odell Ortega__     District/Office __Eastern District of Michigan__

Docket Number __18-20128__

Count Number(s) __1__     U.S. Code Title & Section __18__ : __USC 2252A(g)__ ; __ :__

*Guidelines Manual* Edition Used: __2016__ (*Note*: The Worksheets are keyed to the November 1, 2016 *Guidelines Manual*)

### INSTRUCTIONS

Complete a separate Worksheet A for each count of conviction or as required in a situation listed at the bottom of Worksheet B.*
*Exceptions*: Use only a single Worksheet A where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (*see* §3D1.2(d)) or where a count of conspiracy, solicitation, or attempt is grouped with a substantive count that was the sole object of the conspiracy, solicitation, or attempt (*see* §3D1.2(a) & (b)).

**1. Offense Level** (See Chapter Two)

Enter the applicable base offense level and any specific offense characteristics from Chapter Two and explain the bases for these determinations. Enter the sum in the box provided.

| Guideline | Description | Level |
|---|---|---|
| §2G2.6 | Child Exploitation Enterprise | 35 |
| §2G2.6(b)(1) | A victim had not attained the age of 12 years old | 4 |
| §2G2.6(b)(4) | Use of a computer | 2 |
| | | |
| | | |

If the Chapter Two guideline requires application of a cross reference or other reference, an additional Worksheet A may be needed for that analysis. *See* §1B1.5.     Sum **41**

**2. Victim-Related Adjustments** (See Chapter Three, Part A)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".     § __3A1.1(b)__     **2**

**3. Role in the Offense Adjustments** (See Chapter Three, Part B)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If the adjustment reduces the offense level, enter a minus (–) sign in front of the adjustment. If no adjustment is applicable, enter "0".     §_____

**4. Obstruction Adjustments** (See Chapter Three, Part C)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".     §_____

**5. Adjusted Offense Level**

Enter the sum of Items 1–4. If this Worksheet A does not cover all counts of conviction or situations listed at the bottom of Worksheet B, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.     **43**

✓ Check here if **all** counts (*including* situations listed at the bottom of Worksheet B)* are addressed on this one Worksheet A. If so, no Worksheet B is used.

✓ If the defendant has no criminal history, enter "I" here and on Worksheet D, Item 4. No Worksheet C is used.

## WORKSHEET B
# MULTIPLE COUNTS*

Defendant _____     Docket Number _____

### INSTRUCTIONS

**STEP 1:** Determine if any of the counts group under §3D1.2(a)–(d) ("the grouping rules"). All, some, or none of the counts may group. Some of the counts may have already been grouped in the application under Worksheet A, specifically: (1) counts grouped under §3D1.2(d); or (2) a count charging conspiracy, solicitation, or attempt that is grouped with the substantive count of conviction (*see* §3D1.2(a)). Explain the reasons for grouping:

_____
_____
_____

**STEP 2:** Using the box(es) provided below, for each group of "closely related counts" (*i.e.*, counts that group together under any of the four grouping rules), enter the highest adjusted offense level from Item 5 of the various Worksheets "A" that comprise the group. *See* §3D1.3. Note that a "group" may consist of a single count that has not grouped with any other count. In those instances, the offense level for the group will be the adjusted offense level for the single count.

**STEP 3:** Enter the number of units to be assigned to each group (*see* §3D1.4) as follows:
- One unit (1) for the group of counts with the highest offense level
- An additional unit (1) for each group that is equally serious or 1 to 4 levels less serious
- An additional half unit (1/2) for each group that is 5 to 8 levels less serious
- No increase in units for groups that are 9 or more levels less serious

| | |
|---|---|
| **1.  Adjusted Offense Level for the First Group of Counts** | |
| Count number(s) _____ | ☐ ____ Unit |
| **2.  Adjusted Offense Level for the Second Group of Counts** | |
| Count number(s) _____ | ☐ ____ Unit |
| **3.  Adjusted Offense Level for the Third Group of Counts** | |
| Count number(s) _____ | ☐ ____ Unit |
| **4.  Adjusted Offense Level for the Fourth Group of Counts** | |
| Count number(s) _____ | ☐ ____ Unit |
| **5.  Adjusted Offense Level for the Fifth Group of Counts** | |
| Count number(s) _____ | ☐ ____ Unit |
| **6.  Total Units** | |
| | ____ **Total Units** |

| | | |
|---|---|---|
| **7.  Increase in Offense Level Based on Total Units** (See §3D1.4) | | |
| 1 unit:  no increase | 2½ – 3 units:  add 3 levels | ☐ |
| 1½ units:  add 1 level | 3½ – 5 units:  add 4 levels | |
| 2 units:  add 2 levels | More than 5 units:  add 5 levels | |
| **8.  Highest of the Adjusted Offense Levels from Items 1–5 Above** | | |
| | | ☐ |
| **9.  Combined Adjusted Offense Level** (See §3D1.4) | | |
| Enter the sum of Items 7 & 8 here and on Worksheet D, Item 1. | | ☐ |

***Note:** Worksheet B also includes applications that are done "as if there were multiple counts of convictions," including: multiple-object conspiracies (see §1B1.2(d)); offense guidelines that direct such application (e.g., §2G2.1(d)(1) (Child Porn Production)); and stipulations to additional offenses (see §1B1.2(c)). Note also that these situations typically require the use of multiple Worksheets A.*

# WORKSHEET C
# CRIMINAL HISTORY
## [Page 1 of 2]

Defendant _____     Docket Number _____

*Note:* As an aid, some of the basic criminal history "rules" are listed below. However, there are numerous additional criminal history rules at §§4A1.1 and 4A1.2 that must be used with Worksheet C and for correct application.

**Enter the Earliest Date of the Defendant's Relevant Conduct** _____
(The date of *the defendant's commencement of the instant offense*(s))

### 1.   Prior Sentences Resulting from Offenses Committed Prior to the Defendant's 18th Birthday

(a) **3 Points** if convicted as an *adult*, for each prior sentence of imprisonment *exceeding one year and one month* imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. *See* §§4A1.1(a) and 4A1.2(d)(1) & (e)(1).

(b) **2 Points** for each prior *adult or juvenile sentence* of confinement of *at least 60 days* not counted under §4A1.1(a) imposed within 5 years or from which the defendant was released from confinement within 5 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(b) and 4A1.2(d)(2)(A).

(c) **1 Point** for each prior *adult or juvenile sentence* not counted under §4A1.1(a) or §4A1.1(b) imposed within 5 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(c) and 4A1.2(d)(2)(B).

*Note:* Identify as **"adult"** any sentence exceeding one year and one month that resulted from an adult conviction.
A **release date** is required in only two instances: (1) when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to *the defendant's earliest date of relevant conduct* but resulted in the defendant being incarcerated during any part of such 15-year period; or (2) when a sentence counted under §4A1.1(b) was imposed more than 5 years prior to *the defendant's earliest date of relevant conduct,* but release from confinement occurred within such 5-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |

### 2.   Prior Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday

(a) **3 Points** for each prior sentence of imprisonment *exceeding one year and one month* imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. *See* §§4A1.1(a) and 4A1.2(e)(1).

(b) **2 Points** for each prior sentence of imprisonment of *at least 60 days* not counted under §4A1.1(a) imposed within 10 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(b) and 4A1.2(e)(2).

(c) **1 Point** for each prior sentence not counted under §4A1.1(a) or §4A1.1(b) imposed within 10 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(c) and 4A1.2(e)(2).

*Note:* A **release date** is required when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to *the defendant's earliest date of relevant conduct* but resulted in the defendant being incarcerated during any part of such 15-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |

# Worksheet C — Criminal History [Page 2 of 2]

Defendant __Odell Ortega__                                    Docket Number __18-20128__

(continued from *Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday*)

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### 3.   Sum of Criminal History Points for prior sentences under §4A1.1(a), (b), & (c) in Items 1 & 2

A total of 4 points can be added for all the 1-Point sentences counted in Items 1 & 2 combined.

### 4.   "Status" of Defendant at Time of Instant Offense

**2 Points** for "status" if the defendant committed any part of the instant offense (*i.e.*, any relevant conduct) while under any criminal justice sentence (*e.g.*, probation, parole, supervised release, imprisonment, work release, or escape status) for a sentence counted in Items 1 or 2. *See* §4A1.1(d) and Application Note 4. List the type of control and identify the counted sentence that resulted in the control. Otherwise, enter **0 Points**.

### 5.   Crimes of Violence

**1 Point** for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under §4A1.1(a), (b), or (c) because such sentence was counted as a single sentence which also included another sentence resulting from a conviction for a crime of violence. A total of 3 points can be added under this subsection. *See* §4A1.1(e) and Application Note 5, and §4A1.2(a)(2) & (p). Identify the crimes of violence and briefly explain why the cases are considered a single sentence. Otherwise, enter **0 Points**.

### 4.   Total Criminal History Points (Sum of Items 3–5)

### 5.   Criminal History Category (Enter here and on Worksheet D, Item 4)

| Total Points | Criminal History Category |
|---|---|
| 0–1 | I |
| 2–3 | II |
| 4–6 | III |
| 7–9 | IV |
| 10–12 | V |
| 13 or more | VI |

## WORKSHEET D
# DETERMINING THE SENTENCE
## [Page 1 of 4]

Defendant _Odell Ortega_    Docket Number _18-20128_

| | |
|---|---|
| 1. **Adjusted Offense Level** (From Worksheet A or B)<br>If Worksheet B is required, enter the result from Worksheet B, Item 9. Otherwise, enter the result from Worksheet A, Item 5. | **43** |
| 2. **Acceptance of Responsibility** (See Chapter Three, Part E)<br>Enter the applicable reduction of **2** or **3** levels. If no adjustment is applicable, enter "0". | **– 3** |
| 3. **Offense Level Total** (Item 1 less Item 2) | **40** |
| 4. **Criminal History Category** (From Worksheet A or C)<br>Enter the result from Worksheet C, Item 8, unless the defendant has no criminal history, and as directed at the bottom of Worksheet A, no Worksheet C is used and "I" is entered here. | **I** |

5. **Terrorism; Career Offender; Criminal Livelihood; Armed Career Criminal; Repeat and Dangerous Sex Offender** (See Chapter Three, Part A, and Chapter Four, Part B)

| | |
|---|---|
| a. **Offense Level Total**<br>If the provision for Career Offender (§4B1.1), Criminal Livelihood (§4B1.3), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in an offense level total higher than Item 3, enter the offense level total. Otherwise, enter "N/A". | **45** |
| b. **Criminal History Category**<br>If the provision for Terrorism (§3A1.4), Career Offender (§4B1.1), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in a criminal history category higher than Item 4, enter the applicable criminal history category. Otherwise, enter "N/A". | |

| | |
|---|---|
| 6. **Guideline Range from Sentencing Table**<br>Enter the applicable guideline range from Chapter Five, Part A, in months. | **Life** **to** |
| 7. **Restricted Guideline Range** (See Chapter Five, Part G)<br>If the statutorily authorized maximum sentence or the statutorily required minimum sentence restricts the guideline range (Item 6) (see §§5G1.1 and 5G1.2), enter either the restricted guideline range or any statutory maximum or minimum penalty that would modify the guideline range. Otherwise, enter "N/A". | **240** **to** **Life** |

☐ Check here if §5C1.2 (Limitation on Applicability of Statutory Minimum Penalties in Certain Cases) and 18 U.S.C. § 3553(e) – "The Safety Valve" – are applicable.

8. **Undischarged Term of Imprisonment; Anticipated State Term of Imprisonment** (See §5G1.3)

☐ If the defendant is subject to an undischarged term of imprisonment, or an anticipated state term of imprisonment, check this box. Below list the undischarged/anticipated term(s), the applicable section of §5G1.3 and its direction or guidance as to whether the instant federal sentence is to be imposed to run concurrently or consecutively to the undischarged/anticipated term(s), and any sentence adjustment.

# Worksheet D — Determining the Sentence [Page 2 of 4]

Defendant _Odell Ortega_                                    Docket Number _18-20128_

## 9. Sentencing Options (See Chapter Five, Sentencing Table and §§5B1.1(a) and 5C1.1)

Check the applicable box that corresponds to the Guideline Range entered in Item 6 or Item 7, if applicable.

☐ **Zone A** (See §§5B1.1(a)(1) & 5C1.1(a) & (b))

If checked, the following options are available:

- Fine (See §§5C1.1(b) & 5E1.2(a))
- "Straight" Probation (See §§5B1.1(a)(1) & 5C1.1(b))
- Imprisonment (See §5C1.1(a) & (c)(1))

☐ **Zone B** (See §§5B1.1(a)(2) & 5C1.1(a) & (c))

If checked, *the minimum term may be satisfied by*:

- Imprisonment (See §5C1.1(a) & (c)(2))
- Imprisonment of *at least one month plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(c)(2))
- Probation with a condition that substitutes intermittent confinement, community confinement, or home detention for imprisonment (See §§5B1.1(a)(2) and 5C1.1(c)(3))

☐ **Zone C** (See §5C1.1(a) & (d))

If checked, *the minimum term may be satisfied by*:

- Imprisonment (See §5C1.1(a) & (d)(1))
- Imprisonment of *at least one-half of the minimum term plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(d)(2))

☑ **Zone D** (See §5C1.1(a) & (f))

If checked, *the minimum term is to be satisfied by* a sentence of imprisonment

## 10. Length of Term of Probation (See §5B1.2)

If probation is imposed, the guideline for the length of such term of probation is: (Check the applicable box)

☐  At least one year, but not more than five years if the offense level total is 6 or greater.

☐  No more than three years if the offense level total is 5 or less.

# Worksheet D — Determining the Sentence [Page 3 of 4]

Defendant __Odell Ortega__                           Docket Number __18-20128__

## 11. Supervised Release (See §§5D1.1 and 5D1.2)

**a. Imposition of a Term of Supervised Release:**

[✓] Ordered because required by statute (See §5D1.1(a)(1)).

[ ] Ordered because a sentence of imprisonment of more than one year is imposed (See §5D1.1(a)(2)).

[ ] Is **not** ordered although a sentence of more than one year is imposed, because it is not required by statute **and** the defendant likely will be deported after imprisonment (See §5D1.1(c)).

[ ] Ordered because it may be ordered in any other case (See §5D1.1(b)).

**b. Length of Term of Supervised Release**

Check the Class of the Offense:

[ ] Class A or B Felony: Two to Five Year Term (See §5D1.2(a)(1))

[ ] Class C or D Felony: One to Three Year Term (See §5D1.2(a)(2))

[ ] Class E Felony or Class A Misdemeanor: One Year Term (See §5D1.2(a)(3))

[✓] If a statutorily required mandatory minimum term of supervised release for the offense impacts the guideline range for the applicable Class of Offense above, also check this box, and list the statutory minimum term (See §5D1.2(c)):

   __5__ years mandatory minimum term of supervised release

[ ] If an offense in 18 U.S.C. § 2332b(g)(5)(B) that resulted in, or created a foreseeable risk of, death or serious bodily injury to another person; or if a sex offense, the term of supervised release will not be less than the minimum term established above, and may be up to life (See §5D1.2(b)).

Policy Statement: If a sex offense, the *statutory maximum term* of supervised release is recommended.

## 12. Restitution (See §5E1.1)

a. If restitution is applicable, enter the amount. Otherwise enter "N/A" and the reason:
   5,000 per identified victim

b. Enter whether restitution is statutorily mandatory or discretionary:
   Mandatory

c. Enter whether restitution is by an order of restitution, or **solely** as a condition of supervision. Enter the authorizing statute:
   Order of restitution

# Worksheet D — Determining the Sentence [Page 4 of 4]

Defendant: Odell Ortega    Docket Number: 18-20128

## 13. Fines (The Guideline Range for Fines for Individual Defendants) (See §5E1.2)

| | | Minimum | Maximum |
|---|---|---|---|
| a. | **Special Fine Provisions** Check box if any of the counts of conviction is for a statute with a special fine provision. (This *does not* include the general fine provisions of 18 USC § 3571(b)(2) & (d)). | | |
| | Enter the sum of statutory maximum fines for all such counts. | | $ |
| b. | **Fine Table (§5E1.2(c)(3))** Enter the minimum and maximum fines. | $50,000 | $500,000 |
| c. | **Fine Guideline Range** (Determined by the minimum of the Fine Table (Item 15(b)) and the greater maximum above (Item 15(a) or 15(b))). | $ | $ |
| d. | **Ability to Pay** Check this box if the defendant does not have an ability to pay. | | |

## 14. Special Assessments for Individual Defendants (See §5E1.3)

Enter the total amount of the statutory special assessments required for all counts of conviction:
- $100 for each felony count of conviction.
- $25 for each Class A misdemeanor count of conviction.
- While not subject to guideline sentencing, the special assessments for a Class B misdemeanor, and a Class C misdemeanor or infraction are $10 and $5 per count, respectively.

**TOTAL:** $5,000

## 15. Factors That May Warrant a *Departure* (See §1B1.1(b))

Consider Chapter Five, Part H (Specific Offender Characteristics) and Part K (Departures), and other policy statements and commentary in the *Guidelines Manual* that might warrant consideration in sentencing. (*See also* the "List of Departure Provisions" included in the *Guidelines Manual* after the Index).

## 16. Factors That May Warrant a *Variance* (See §1B1.1(c))

Consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole.

Completed by: April N. Russo    Date: 4/6/2018