1               UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MICHIGAN
2                    SOUTHERN DIVISION

3
    UNITED STATES OF AMERICA,
4
                        Plaintiff,
5   vs.                              Case No. 18-20128
                                     Hon. Stephen J. Murphy, III
6   D-5 ODELL ORTEGA,

7                       Defendant.
    _____/
8
                          **SENTENCING**
9
           BEFORE THE HONORABLE STEPHEN J. MURPHY, III
10               United States District Judge
             Theodore Levin United States Courthouse
11               231 West Lafayette Boulevard
                  Detroit, Michigan  48226
12              Wednesday, December 5, 2018

13  APPEARANCES:

14  For the Plaintiff          KEVIN MULCAHY
    United States of America:  U.S. Attorney's Office
15                             211 W. Fort Street
                               Suite 2001
16                             Detroit, Michigan  48226
                               313-226-9713
17
    For the Defendant          JOSEPH R. ARNONE
18  Odell Ortega:              Arnone Law, PLLC
                               10 South Main Street
19                             Suite 403
                               Mount Clemens, Michigan  48043
20                             586-777-7720

21

22

23
          To obtain a certified copy of this transcript, contact:
24      Linda M. Cavanagh, CSR-0131, RDR, RMR, CRR, CRC
                    Official Court Reporter
25        (313) 234-2616 • www.transcriptorders.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

<u>TABLE OF CONTENTS</u>

<u>Page</u>

<u>SENTENCING:</u>

Allocution by Mr. Arnone.............................5
Allocution by Defendant Odell Ortega................8
Allocution by Mr. Mulcahy..........................13
Comments by the Court..............................19
Sentence of the Court..............................21

<u>EXHIBITS</u>

<u>Identification</u>                    <u>Offered</u>    <u>Received</u>

NONE

1    Detroit, Michigan

2    Wednesday, December 5, 2018

3                    — — —

4    (Proceedings commenced at 3:32 p.m., all parties

5    present)

6    THE CLERK:  Court calls Case No. 18-10128, United

7    States of America versus Odell Ortega.

8    Counsel, state your appearances.

9    MR. ARNONE:  Good afternoon, Your Honor.  May it

10   please the Court, Joseph Arnone on behalf of Mr. Ortega.

11   THE COURT:  Greetings, Mr. Arnone.

12   MR. MULCAHY:  Good afternoon again, Your Honor.

13   Kevin Mulcahy for the United States.

14   THE COURT:  Okay.  Good afternoon, Mr. Mulcahy.

15   And let me turn initially to Mr. Ortega, the

16   defendant, and I'll ask you, sir, whether or not you have had

17   an opportunity to go over the Pre-Sentence Report in the case

18   with your lawyer and to discuss it and any objections that were

19   made to it.

20   DEFENDANT ORTEGA:  Yes, I've had a chance to review

21   it and we have no objections, Your Honor.

22   THE COURT:  Okay.  All right.  Very good.  The

23   defense nor the government filed objections to the report.

24   Is there anything you'd like to say at this time, Mr.

25   Arnone, as to the appropriate -- or excuse me, as to the

1  modification, correction, deletion or any other errors in the

2  probation officer's report that you haven't already addressed?

3          MR. ARNONE:  No, Your Honor.

4          THE COURT:  Mr. Mulcahy?

5          MR. MULCAHY:  No, Your Honor.

6          THE COURT:  Okay.  The probation officer's

7  Pre-Sentence Report then will be factually considered the

8  findings of the Court for purposes of this hearing only.  The

9  Offense Level is 43, the Criminal History Category is I.  That

10  results in an advisory guideline range of life in prison.  That

11  matches up with the Plea Agreement provision.  And I do

12  recognize the government has a different sentence memorandum or

13  a sentence recommendation which they will get to in one moment.

14          There is no forfeiture relevant to this defendant.

15          Mr. Mulcahy will state the restitution amount when he

16  takes the microphone and addresses the Court.

17          The victims of the crime committed by Mr. Ortega have

18  spoken to the Court at length earlier today and were also heard

19  in the context of a lengthy victim impact statement and a

20  number of addenda to the government's sentence memoranda which

21  Mr. Ortega and all the other defendants in the case have been

22  provided with.

23          Fine would be superfluous in light of special

24  assessments and restitution, and given defendant's limited

25  financial resources, I will not order one.

1           And so therefore it is time now for me to recognize

2   Mr. Arnone on behalf of Mr. Ortega for any remarks he'd like to

3   make on behalf of his client.  I do note the preparation and

4   filing on November 29 of a fine sentence memorandum from Mr.

5   Arnone.  I'm familiar with that and happy to hear anything else

6   you'd like to say now.  Go right ahead.

7           MR. ARNONE:  Thank you, Your Honor.

8           Your Honor has touched on a great deal of topics that

9   I had planned to address in my sentencing, so you've cut my

10  time to speak down greatly, Judge.

11          THE COURT:  Okay.  Well, I'm happy to hear that.  Go

12  ahead.

13          MR. ARNONE:  I ask that you don't hold that as a

14  reflection as to the severity of this case or how my client

15  views it because the Court has made a very interesting inquiry,

16  which is why defendants with no contact with the criminal

17  justice system who appear to have an otherwise normal

18  upbringing would engage in this.

19          I've spoken with my client in great detail about this

20  and I've heard words thrown around like addiction.  This, in my

21  client's own admission, is not just an addiction, Judge; it's a

22  sickness.

23          THE COURT:  Mm-hmm.

24          MR. ARNONE:  And I have tried to distinguish him from

25  the other defendants who have been sentenced here today, and

1    one -- one factor does stand out, which is he does not stand

2    before the Court asking that he -- or recognizing that he is

3    responsible for just the harm that he has committed.  He

4    understands that he has participated in an enterprise and that

5    together they are all responsible for the immeasurable amount

6    of harm that occurred in this case.  That is about as plain and

7    as blunt as I can put it, Judge.

8              And for someone who, as you I'm sure have noticed

9    from the letters that were written by his family, this is a

10   person who was brought up with morals and with decency and who

11   knew better, and the only way that we can come to some kind of

12   rationalization as to how this occurred was that he disregarded

13   the harm that was going to occur.

14             And I have since this case -- since being assigned to

15   this case, I've recognized signs of an acceptance of that harm

16   not just to the young girls that he spoke with in chat rooms

17   but the other victims in this case: the parents, the friends,

18   the teachers.  All of them are recognized by Mr. Ortega as

19   victims of his crimes, and I think he never had any clue how

20   far his net was going to be cast when he engaged in this

21   conduct.

22             And so that comprehension leads him to a great deal

23   of remorse and that is going to cause him pain.  It is in no

24   way, shape or form comparable to the pain that the victims

25   incurred, but it is put forth as an acknowledgement in the

1    hopes that if it is even just a drop of closure in the canyon

2    of harm that has occurred here, I believe that it merits some

3    mentioning, because he will suffer, though nowhere near what he

4    should in the eyes of the victims.  And Your Honor, whatever

5    harm befalls him in prison he will know will be the result of

6    the harm that he has committed.  That he is not remorseful for

7    his apprehension, he is not remorseful because he broke the

8    law.  He is remorseful for the harm that has occurred.

9           And that is the only true reflection of I think what

10   merits a departure from the guideline or the advisory guideline

11   range short of any sort of disparity of sentencing, and I won't

12   go through that because I've addressed it in my sentencing

13   memorandum.

14          THE COURT:  Yes, sir.

15          MR. ARNONE:  But, Your Honor, that is really where I

16   see my client is making a genuine acceptance of responsibility

17   and an acknowledgement, a true acknowledgement of the harm that

18   occurred as a result of these crimes.  This is not a child

19   pornography case, this is a Child Exploitation Enterprise case.

20   And I do feel that that distinguishes my client in this case

21   because he has made that reconciliation and he will live with

22   it for rest of his life.  The harm that he has caused his

23   victims, the harm that he has caused his family, the harm that

24   has occurred, he will never know the fullest -- full extent of

25   that, and I think he understands that portion of it, Judge, and

1    so I think it makes his acceptance of responsibility truly

2    genuine.

3              Thank you, Your Honor.

4              THE COURT:  Well said.  Thank you very much, Mr.

5    Arnone, and thanks again for your representation and hard work

6    on the file as well.

7              Now, Mr. Ortega, of course you have the opportunity

8    to speak to the Court on your own behalf as to anything you'd

9    like to say in addition to the sentencing memorandum or to the

10   letters that I've read, and I'd be very happy to hear from you

11   now.  Go right ahead.

12             DEFENDANT ORTEGA:  Greetings, Your Honor.  My name is

13   Odell Arturo Ortega and I confess that I am guilty of the

14   charge that is being filed against me.  I engaged in a criminal

15   enterprise to coerce and entice minors for the purpose of

16   creating child pornography, and I've thought of how to put to

17   words what exactly it is that led me to engage in this

18   despicable activity.  I believe that perhaps through

19   understanding, it may be a building block towards helping the

20   survivors of this crime just rebuild their lives.  So I -- I

21   thought of what it is that exactly led me to -- to commit these

22   hideous crimes.

23             I can't claim ignorance because I was fully aware of

24   the fact that what I was doing was illegal and morally

25   repulsive.  There was never a moment in which I convinced

1   myself that what I was doing was in any way permissible.  That

2   is why I kept it hidden, because I was ashamed of my actions

3   and I knew that it was wrong.

4        I can't claim that I wasn't in control of my mental

5   faculties because I never abused drugs or alcohol or any other

6   medication during the time in which I engaged in these

7   activities.  I believe myself to be of sound mind and I believe

8   that I was fully cognizant during the times that I engaged in

9   this activity.

10        I can't claim to have been coerced or misled by

11   anyone because I have a good, loving family who sacrificed

12   everything to provide me with a good life.  Nobody forced me to

13   engage in this.

14        And, Your Honor, I -- I -- I can't claim to have an

15   addiction because an addiction is defined as something that

16   is -- that creates a chemical dependency.  I did not have a

17   chemical dependency on -- on pornography.

18        I can't claim to have a sickness despite the fact

19   that my actions can only be described as those stemming from a

20   sick mind because if a person is sick, you have to hate the

21   sickness and not the disease.  To say that I was sick would be

22   to divorce myself from the choice that I had.  Every single day

23   for hours on end I had the choice to click on the little X on

24   the type right -- top right-hand corner and to not engage.  And

25   so to say that I had a sickness is to not accept the fact that

1    I had a choice.

2          Every single day was an opportunity at best to report

3    the ongoing crime that I was witnessing and partaking of or, at

4    worst, to not engage in it, and in each instance I chose the

5    selfish path; I chose to engage in it.

6          Your Honor, I can only account for my actions in the

7    following way.  I was perverse, I was corrupt and I was

8    inconscionable [sic].  There was nothing in my past or in my

9    life which could have led to my actions.  I am fully to blame.

10   This is something that I want to stress because after hearing

11   the testimony from some of the survivors, one of the things

12   that struck me is their wish to have never entered these

13   websites, their unwillingness to continue to use computers.

14   And I want to stress that it was in no way their fault.  They

15   were minors, I was the adult in the situation.  It was my

16   responsibility to behave with respect of the law and with

17   respect to human dignity, and in every instance I failed, Your

18   Honor.  That is just something that I want to stress, that it

19   is my fault completely and it is not their fault.

20          I am grateful to the prosecution and to the Federal

21   Bureau of Investigation for identifying the victims so that

22   they can be provided with the counseling necessary to rebuild

23   and heal and so that they can be here to have their voices

24   heard.  I am eternally grateful for the work that you have done

25   in identifying the survivors and -- and I'm sorry to have given

1    you such an arduous task.  I place my trust in the government

2    completely that they will be afforded any aid in any avenue

3    necessary in rebuilding.

4            I commend the bravery of the survivors in coming

5    forward and in traveling so far to witness justice be done here

6    today and to ensure that their voices be heard.  You showed

7    bravery in stepping forward to take a stand against injustice.

8    Where you were brave, I was a coward.  I hid behind a veil of

9    anonymity.  You showed honesty in stepping forward and facing

10   the ugly truth of this crime.  Where they were honest, I was

11   dishonest.  I chose to hide the truth selfishly because I was

12   in fear of the repercussions that would befall me.  I should

13   not have had to rely on the strength and on the conviction of

14   people so young and those who were innocent.  I knew better.

15           I'm sorry for every bit of harm that I have inflicted

16   both to the survivors and to their families and to all those

17   who love them.  I pray that everything will be restored that I

18   have taken from you, whether it be the peace of mind, your

19   ability to trust in people or the knowledge that you are not at

20   fault.  Today you help bring justice not just for yourselves

21   but for the many people who couldn't be here today.  You are

22   true superheroes and I thank you.

23           Your Honor, I am grateful for the opportunity to be

24   corrected.  I will serve my time remembering the pain that I

25   have caused to the victims and hoping and praying every single

Sentencing • Wednesday, December 5, 2018

1    day that everything that I took from them will be restored.

2    Thank you.

3          THE COURT:  All right.  Thank you very much.  Now,

4    hold on just a minute, Mr. -- you can come on up, Mr. Mulcahy.

5    Let's put aside just for a moment the sentence, the report.

6    It's very rare, in fact remarkable, to have an individual make

7    a statement like the one you did, okay?  It's very rare, if not

8    remarkable, for a person to come in and accept complete

9    responsibility.

10          I'm not one to correct or psychologize with

11    defendants, but I want you to know there was a reason why you

12    didn't hit the X, okay, and there was psychological dependency

13    and other things that were created here, and that's going to be

14    part of the challenge you have to face in terms of correction,

15    overcoming and getting better.

16          And you said a number of, again, fairly remarkable

17    things about the agents, the prosecutors, the Court and the

18    victims, the types of things we don't hear around here very

19    much.  But you need to take those noble desires and incentives

20    and pair them with an effort to understand and get better and

21    learn by what you did, okay, and then you -- you can finish

22    this out on -- on a winning note.

23          Do you understand what I'm saying?

24          DEFENDANT ORTEGA:  I do understand that, Your Honor.

25          THE COURT:  All right.  Thank you, Mr. Ortega,

1    appreciate your words.

2         And that does not in any way preclude the sentencing

3    recommendation of the United States or anything that I want to

4    do with sentencing, but it does react in some direct way to the

5    rather extraordinary remarks that Mr. Ortega just made.

6         Go right ahead, Mr. Mulcahy.

7         MR. MULCAHY:  Thank you, Your Honor.

8         I concur with the Court that Mr. Ortega has shown

9    true remorse here and some of his words are -- are very

10   impactful.

11        Also impactful obviously is the crimes that he has

12   committed.  Mr. Ortega is -- is a different type of defendant

13   than some of the others.  His conduct was extraordinary even

14   among this group.  We've placed him with the sentencing

15   recommendation of 50 years, which puts him right at the top or,

16   excuse me, near the top, and we do so for good reasons.  Like

17   his counterparts, he was a talker on the website, he spoke with

18   the girls.  He used awful language, he asked them to do awful

19   things, and I won't go over those again.  He was also a hunter

20   like several of the other gentlemen that have been sentenced

21   here today and will be tomorrow.

22        But I told you at the beginning that he was

23   different, and he was different for a couple of reasons.  One

24   is he was the recorder for the group, and not necessarily just

25   for the group but for his own sexual interests.

1          The recovery of the devices from Mr. Ortega's home

2     led to a review that was staggering for the FBI.  We noted in

3     our sentencing memorandum that there were over -- almost 5,000

4     child pornography videos, more than 20,000 images, and that if

5     someone were to sit down and watch all of the child pornography

6     videos on Mr. Ortega's devices, it would take them more than

7     50 days.

8          But what I neglected to include was that those are

9     child pornography videos.  In other words, they meet the strict

10    definition of child pornography by the -- that Congress has

11    laid out.  But there were more than -- almost 3,000 hours of

12    additional videos that would not meet the definition of child

13    pornography but would certainly be child exploitive.  These

14    would be videos of the group talking with girls and asking them

15    to let's say strip down to their underwear or maybe remove

16    their bra or something that would not amount to child

17    pornography as defined by Congress but is certainly exploitive.

18    Those videos, if someone were to sit and watch them on a

19    24 hours a day, would take more than 120 days to watch.  So Mr.

20    Ortega's collection was astounding in its volume.

21          It was also meticulously organized as we put in our

22    sentencing memo, organized by girl's name and sexual act

23    engaged in, dates, all kinds of information.  For -- for some

24    victims he even put the real city that these girls lived in as

25    sort of I guess to memorialize that.

1     THE COURT:  Well, he actually met up with a victim,
2  right?  I mean --
3     MR. MULCAHY:  That is correct, Your Honor.
4     THE COURT:  -- are you going to say anything about
5  that?  Go ahead.
6     MR. MULCAHY:  There was -- Mr. Ortega is different in
7  another way in that unlike virtually anyone else in the group,
8  he met up with -- with a particular victim.  This is Minor
9  Victim 10.  Now, to be clear, he met up with her after she
10  turned the age of 18.
11     THE COURT:  Right.
12     MR. MULCAHY:  But she was victimized by this group
13  while she was underage.  He met up with her, paid for the hotel
14  room that she came to when she came to Miami that they stayed
15  together in.  He had such a special relationship with her that
16  in the folder of files that contained Minor Victim 10's name,
17  there was -- it was full of material from various websites,
18  full of child pornography of this victim, and he even had some
19  files that he called "Nude for Me."  In other words, these were
20  specially made by Minor Victim 10 for Mr. Ortega.
21     So close were the two of them that Mr. Ortega, in
22  what is a tragic irony, wrote a letter of support so that she
23  could get a therapy dog, a therapy dog she needs of course
24  because of the actions of Mr. Ortega and his friends.
25     Meeting up with this victim takes him to a level

1      different than -- than some of the others.  But that was not

2      the only victim.  It was the only victim met up with, but there

3      were other victims that he had a special relationship with.

4      Minor Victim 21 whose letter the Court heard earlier this

5      morning remembered him so much that she said, "I needed to see

6      the name Odell Ortega."  You see, Mr. Ortega bought her a

7      specific lingerie outfit and asked her to wear it and take

8      pictures and videos of that, which she did.  So there was again

9      a significant relationship there.

10             Earlier today, Your Honor, we told you that Minor

11     Victim 18 is in the courtroom with her mother and we read a

12     brief statement on -- on her behalf.  She did not come forward

13     but I read a brief statement on her behalf.  Having spent the

14     day here, Your Honor, Minor Victim 18's mother wanted to say

15     some words that were specific about Mr. Ortega, and those had

16     to do with the effect of Mr. Ortega's actions in particular.

17     You see, Mr. Ortega actually paid money to Minor Victim 18 so

18     that she would produce child pornography for him.

19             Minor Victim 18's mother reports that it has -- this

20     crime has wreaked havoc on her family, that she has missed

21     countless school functions, meaning Minor Victim 18, and that

22     they have bought her a variety of pets to help her cope and to

23     be sort of there for her at all times even when they can't be.

24             So the effect I know on the victims the Court has

25     heard, and I certainly appreciate all that the Court has done.

1   But as Mr. Ortega in particular, I think that the views of

2   Minor Victim 18's mother are important to share here today.

3          So I indicated earlier that he was -- he was a --

4   different.  That was because of his role as a recorder and

5   because as Your Honor pointed out, he met up with girls and had

6   significant relationships.

7          By his own admissions, he was on Website A nearly

8   every day, so his -- the scope of his interaction with the

9   girls and with the website was extraordinary.

10          Last thing I'll say about his collection of child

11   pornography, jumping back to that, was that the content itself

12   was not limited to the victims in this case undressing or

13   masturbating on camera.  Instead, it -- it was sort of more

14   wide ranging.  It had child pornography involving infants and

15   toddlers, graphic videos, bestiality videos, even cutting

16   videos.  So the content structure and size of Mr. Ortega's

17   child pornography collection helped make him stand apart from

18   the others.

19          I would note as to the history and characteristics of

20   this defendant, Your Honor, like the others, he has no criminal

21   history.  But like every one of those defendants when we say

22   about every defendant today and the ones the Court will hear

23   tomorrow, the idea that they have no criminal history is -- is

24   sort of a false equivalency.  This is not the kind of case

25   where an individual committed a crime one time or a couple of

1    times.  These men were committing crimes every single day, and

2    for Mr. Ortega it was every single day between 2010 and 2017.

3    So while they've never met the criminal justice system before,

4    they are not people who've made one or two terrible decisions

5    that were criminal.  These men were making criminal decisions

6    every day.

7         He is from a good home.  He's very smart as the Court

8    saw today based on his very thoughtful statement.  And again,

9    like the others, he doesn't have a master's degree like some of

10   the others do, but he did spend a year at a university, does

11   have an associate's degree, and he used all of that education

12   indication to manipulate girls.

13        Lastly, Your Honor, I just want to talk for just a

14   brief second about deterrence.  Your Honor has mentioned

15   deterrence in -- in virtually every sentencing thus far, and I

16   think it's important in a case like this.  And specifically I

17   know that the part of the defense argument is that while

18   deterrence is more -- speaks more to the certainty of

19   imprisonment rather than the length of time, I think in a case

20   like this those who would prey on our children need to know

21   that their sentence will be measured in decades, not in years.

22   And so I think deterrence is very important in a case like

23   this.

24        All that being said, especially given Mr. Ortega's

25   unique actions in the case, it puts him right at the top, and

1   so the government's recommendation has been 50 years for Mr.

2   Ortega.  Thank you.

3          THE COURT:  Okay.  All right.  Thanks a lot.

4          MR. MULCAHY:  And I should say, Your Honor, one more

5   thing.  That the amount of restitution Your Honor asked me to

6   speak on --

7          THE COURT:  Yes.

8          MR. MULCAHY:  -- is $110,000 for Mr. Ortega.

9          THE COURT:  Okay.  And again, that's $5,000 per

10  victim by agreement with Mr. Arnone, correct?

11         MR. ARNONE:  Yes, Your Honor.

12         THE COURT:  Okay.  All right.  Very good.  Okay.

13  Thank you for that, Mr. Mulcahy, and we -- we will proceed to

14  analyze the 3553(a) factors and state the sentence.

15         Again, criminality that can hardly be explained, no

16  convictions whatsoever in Mr. Ortega's background, a steady

17  employment history, graduate of high school.  The family is

18  quite remarkable.  They left Nicaragua in the 80s due to

19  political unrest, and Mr. Ortega's father speaking out against

20  injustice, they went to Panama, and financial conditions there

21  caused them to finally end up in South Florida.

22         As Mr. Mulcahy noted, Mr. Ortega speaks

23  extraordinarily well.  He has an associate's degree and some

24  post-education of that.

25         No physical health issues, no mental health

1    conditions.

2        He denies a substance abuse history, but I think

3    addiction and chemical issues that motivate this type of crime

4    should be explored in prison.

5        Those factors would merit a sentence below the

6    guideline range as recognized by the United States and as -- as

7    I believe.  It's rare that I've seen one of these cases, and --

8    and this one and the last one that we were together on, at

9    least the government lawyers and I, that you didn't wish you

10   could -- could start over again without this venture into

11   extreme criminality for which the defendant deserves the most

12   serious sentence.  You would think that a background like that

13   would allow Mr. Ortega to really do things to contribute in a

14   very positive way to his community in South Florida.

15       The sad fact is that Mr. Ortega was a member of an

16   online group for quite some time.  By his own admission, he

17   sought out minor females.  He engaged them in sexually

18   inappropriate conduct and he indeed, as we heard earlier,

19   destroyed many lives.  The victims were asked to do the most

20   unspeakable things on camera or live webcams, which were in

21   some ways recorded, and as Mr. Ortega and Mr. Mulcahy

22   mentioned, were categorized in a very thorough and organized

23   way in his home.

24       I'm very troubled about the engagement with some of

25   the victims, as anybody would be.  That obviously evidences the

1    taking of the behavior to the next level, and while not

2    surprising, it is extremely alarming.  And I think an

3    appropriate sentence would prohibit and deter personally that

4    sort of conduct so that the victims of this case can go about

5    their recovery realizing that they're not going to be harmed by

6    Mr. Ortega, and again, throughout our culture I would hope

7    would say when we see offers to get involved online with

8    inappropriate websites or with minors, we not only click on the

9    X, to quote Mr. Ortega, but we -- we call law enforcement as

10   well to try to clean this problem up.

11           Therefore, pursuant to the Sentence Reform Act of

12   1984, the Court, having considered the guidelines and factors

13   contained in 18 USC, Section 3553(a) that I just went over,

14   will hereby commit the defendant Odell Ortega to the custody of

15   the us Bureau of Prisons for a term of 450 months.

16           Upon release from imprisonment, the defendant shall

17   be placed on supervised release for five years.

18           He must pay a special assessment of a hundred dollars

19   that will be due immediately, and he must pay a $5,000

20   assessment for the Justice of Victims Trafficking Act from

21   2015.  No interest or penalties on any of these obligations.

22           There will be a restitution order in the amount of

23   $110,000 payable to the victims of this offense by stipulation

24   and agreement of counsel.  That won't accrue interests or

25   penalties as -- either.

1    Now, while in custody, Mr. Ortega must participate in

2    the Inmate Financial Responsibility Program, IFRP.  I'm aware

3    of the requirements of the program and I approve the payment

4    schedules of the program and hereby order the defendant's

5    compliance with it.

6    No fine, no -- excuse me -- yeah, no fine, no costs

7    of incarceration and no costs of supervision due to the

8    defendant's lack of financial resources to pay the same.

9    The defendant -- or excuse me, the mandatory drug

10   testing condition will be suspended based on the Court's

11   determination that the defendant poses a low risk of substance

12   abuse, but I do recommend screening and treatment for alcohol

13   addiction while in jail or, excuse me, federal prison.

14   One of the lines -- I'm sure the Bureau of Prisons

15   will pick up on this.  One of the lines I saw in there indicate

16   that -- as well as the dialogue we've had here today --

17   indicate that not alcohol addiction, but chemical dependency on

18   pornography and things of this nature, Sex Anonymous, those

19   types of programs after screening may very well be appropriate

20   for this particular defendant.

21   Strike what I said about drinking.  That -- that was

22   a misstatement by the Court.

23   Now, prior to his arrest, Mr. Ortega lived in the

24   Southern District of Florida, and we will transfer his term of

25   supervised release from here to there for his -- for the

Sentencing • Wednesday, December 5, 2018

1   duration of his supervision.  While on supervision therefore,

2   Mr. Ortega must abide by the standard conditions adopted by the

3   U.S. District Court for the Southern District of Florida.

4           Due to the nature of the instant offense, I will

5   impose all of the same special conditions verbatim that I put

6   on Mr. Maire earlier in the proceeding and which I said I would

7   not repeat, and that would include the three special conditions

8   regarding financial accountability and restitution.

9           And that will be the sentence of the Court.  Are

10  there any objections that you'd like to make, Mr. Mulcahy?

11          MR. MULCAHY:  No, Your Honor.

12          THE COURT:  Mr. Arnone, any objections?

13          MR. ARNONE:  No, Your Honor.

14          THE COURT:  Okay.  All right.  Thank you both very

15  much.

16          Then the sentence that I just stated, without

17  objection, will be imposed.

18          Mr. Ortega, you have signed a Plea Agreement that

19  contains the waiver of the right to appeal your sentence.  You

20  certainly may waive that right as part of your Plea Agreement.

21  If you do as you have here sign such a waiver, those are

22  enforceable.  And if you don't think yours is valid and wish to

23  go to the Court of Appeals, you have to do that directly.

24          The defendant will be remanded to the custody of the

25  marshal for the completion of his sentence.

1          Both parties have copies of the Pre-Sentence Report.

2   Keep those strictly confidential and we'll send complete copies

3   to the Bureau of Prisons and the Sentencing Commission.

4          Anything else from the United States?

5          MR. MULCAHY:  Yes, Your Honor.  The government moves

6   to dismiss the remaining counts in the indictment as to this

7   defendant.

8          THE COURT:  Okay.  All remaining counts as to Mr.

9   Ortega are dismissed and will be adjudged so in the judgment

10  and commitment order for the Court's recordation of the

11  proceedings.

12         Anything else from Mr. Arnone?

13         MR. ARNONE:  No, Your Honor.

14         THE COURT:  Okay.  Thank you for your hard work, both

15  counsel, on the case.  Good luck, Mr. Ortega.

16         MR. ARNONE:  Thank you, Judge.

17         THE COURT:  Okay.  All right.  It looks like we'll be

18  in recess for a few minutes and we'll try to get our remaining

19  defendant up here, okay?  All right.

20         THE CLERK:  All rise.  Court's now in recess.

21         (Proceedings concluded at 4:07 p.m.)

22                        —  —  —

23

24

25

1      C E R T I F I C A T I O N

2          I, Linda M. Cavanagh, Official Court Reporter of the

3    United States District Court, Eastern District of Michigan,

4    appointed pursuant to the provisions of Title 28, United States

5    Code, Section 753, do hereby certify that the foregoing pages 1

6    through 24 comprise a full, true and correct transcript of the

7    proceedings held in the matter of United States of America vs.

8    D-5 Odell Ortega, Case No. 18-20128, on Friday, May 11, 2018.

9

10

11                        s/Linda M. Cavanagh
                          Linda M. Cavanagh, RDR, RMR, CRR, CRC
12                        Federal Official Court Reporter
                          United States District Court
13                        Eastern District of Michigan

14

15

16    Date: October 25, 2019
      Detroit, Michigan
17

18

19

20

21

22

23

24

25